UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARLENE EWALD, | : | Case No. 3:05-cv-31 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IT IS REVERSED;
(2) JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF AWARDING
BENEFITS; AND (3) THIS CASE IS CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue

is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not

disabled" and therefore not entitled to a period of disability, disability insurance benefits

("DIB") or supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.")

at 11-28).

I.

This case began on February 25, 2002, when Plaintiff filed applications for SSI

and DIB alleging a disability onset date of July 29, 2001, due to back problems,

depression, anxiety, and mental retardation (Tr. 93-5, 379-81, 516-39). That filing

spawned nearly a decade of litigation featuring multiple rulings from various authorities.

Plaintiff's claims were first denied on the state agency level, and she requested a hearing *de novo* before an ALJ. (Tr. 31). A hearing was held before Administrative Law Judge James I. Knapp on April 29, 2004, at which Plaintiff appeared with counsel and testified. (Tr. 36-65). On May 27, 2004, ALJ Knapp entered his decision, finding Plaintiff not disabled because she had the residual functional capacity ("RFC") to perform a reduced range of light exertional work for which there were a significant number of jobs. (Tr. 11-28). Plaintiff requested review of ALJ Knapp's decision by the Appeals Council. (Tr. 9, 4-6). On December 6, 2004, the Appeals Council refused to take the case, making ALJ Knapp's decision Defendant's final determination, of which Plaintiff sought judicial review. (Tr. 4-6). On December 6, 2005, Magistrate Judge Ovington of this Court remanded the case to the Commissioner for further proceedings, pursuant to sentence six of 42 U.S.C. § 405(g), in light of significant, newly obtained evidence. (Tr. 545-51). On January 19, 2006, the Appeals Council remanded the case back to ALJ Knapp. (Tr. 554).

On July 11, 2006, ALJ Knapp held a supplemental hearing at which Plaintiff again appeared and testified, as did both a medical expert, psychologist Dr. Mary E. Buban, and a vocational expert. (Tr. 443-507). At the hearing, Plaintiff amended her disability onset date to June 20, 2003, a date immediately preceding when Plaintiff first sought regular mental-health treatment. (Tr. 505-7). On July 28, 2006, ALJ Knapp issued a partially favorable decision, finding Plaintiff disabled, but only as of August 1, 2005, rather than June 20, 2003, as Plaintiff submitted. (Tr. 539).

Plaintiff sought review by the Appeals Council of the unfavorable portion of ALJ Knapp's decision - the denial of disability from June 20, 2003 to August 1, 2005. (Tr. 578). On October 26, 2007, the Appeals Council granted Plaintiff's request, finding that ALJ Knapp did not properly evaluate the medical record and did not adequately determine whether alcohol and drug addiction were contributing factors material to a disability finding. (Tr. 542-44). Again the case was remanded, but because it had already been remanded once to ALJ Knapp, the Appeals Council sent it to a different ALJ. (*Id.*).

On September 25, 2008, ALJ Thomas R. McNichols II held another hearing, the third in the case. (Tr. 980-1036). Plaintiff appeared with counsel and testified. (Tr. 984-1011). A medical expert, psychologist Dr. Georgia Pitcher, testified via telephone. (Tr. 1025-38, 1011-25).

On February 4, 2009, ALJ McNichols issued a decision finding Plaintiff was not disabled from June 20, 2003 to August 1, 2005. (Tr. 405-22). On September 4, 2009, the Appeals Council declined Plaintiff's request for review, making ALJ McNichols' decision the final decision of the Commissioner. (Tr. 396-7). Defendant Commissioner then moved this Court to reopen the case in order to review ALJ McNichols' decision, which became the final decision of the Commissioner and thus subject to review by a federal court under 42 U.S.C. § 405(g). (Doc. 32 and 33).

At the alleged onset of her disability, Plaintiff was a 49 year old female with a tenth grade education whose past relevant work experience included employment as a machine shop assembler. (Tr. 984, 986, 136).

The ALJ's "Findings of Fact and Conclusions of Law," which represent the

rationale of his decision, were as follows:

1.  The claimant met the insured-status requirements of the Social
    Security Act through March 31, 2007.

2.  The claimant has not engaged in substantial gainful activity since June 20,
    2003, the amended alleged disability onset date (20 CFR 404.1571 *et seq.*,
    and 416.971 *et seq.*).

3.  The claimant has the following "severe" impairments: chronic back pain
    attributed to arthritis; mild left knee arthritis; recurrent major depression;
    borderline intellectual functioning; borderline personality disorder; and
    recurrent substance abuse (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4.  The claimant does not have an impairment or combination of impairments
    that meets or medically equals one of the listed impairments in 20 CFR Part
    404, Subpart P, Appendix 1, the so-called "Listing of Impairments" (20
    CFR 404.1525, 404.1526, 416.925, and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that
    the claimant has the residual functional capacity to perform work activities
    at the light exertional level, subject to the following limitations: no climbing
    of ropes, ladders, or scaffolds; no more than occasional stooping, kneeling,
    crouching, crawling, or climbing stairs; no exposure to hazards, such as
    moving machinery or unprotected heights; no direct dealing with the
    general public; no complex or detailed instructions; low stress jobs that do
    not have production quotas and that do not involve over-the-shoulder
    supervision; no requirement to maintain concentration on a single task for
    longer than 15 minutes at a time; no more than limited contact with
    coworkers and supervisors, i.e., no teamwork; and no jobs requiring reading
    skills above the 7th grade level or math skills above the 5th grade level.
    Therefore, the claimant has the functional capacity to perform a reduced
    range of light work.

6.  The claimant was unable to perform any past relevant work (20 CFR
    404.1565 and 416.965).

7.    The claimant was born on May 21, 1954, and was [49] years old, which is defined as a "younger individual," on the alleged disability onset date. Upon attaining 50 years of age in May 2004, the claimant's age category changed to that of "closely approaching advanced age" (20 CFR 404.1563 and 416.963).

8.    The claimant has a "limited" education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    The claimant's past relevant work was unskilled, so there is no issue of transferability of job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering her age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, 416.969a).

11.   The claimant was not under a "disability," as defined in the Social Security Act, from June 20, 2003, through July 31, 2005, the period at issue (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 405-22.)

On appeal, Plaintiff maintains that ALJ McNichols did not adequately heed the Appeals Council's remand directives.   Plaintiff argues that, like his predecessor, ALJ Knapp, ALJ McNichols failed to explain whether or not certain earlier psychological findings support a determination that there was a significant difference in the severity of Plaintiff's functional limitations as of Plaintiff's alleged onset date of June 20, 2003 vs. August 1, 2005, the disability date identified by the ALJs.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability

finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S. Ct. 1420 (1971). In

performing this review, the Court considers the record as a whole. *Hephner v. Mathews,*

574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of

benefits, that finding must be affirmed, even if substantial evidence also exists in the

record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has

explained:

> The Commissioner's findings are not subject to reversal merely because
> substantial evidence exists in the record to support a different conclusion.
> The substantial evidence standard presupposes that there is a "zone of
> choice" within which the Commissioner may proceed without interference
> from the courts. If the Commissioner's decision is supported by substantial
> evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is

entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present

sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

-6-

## A.

On October 26, 2007, the Appeals Council entered a remand order sending

Plaintiff's case to ALJ McNichols with explicit instructions. ALJ Knapp based his

decision chiefly on hearing testimony of the medical expert, who opined that Plaintiff's

mental impairments rendered her disabled as of August 1, 2005, rather than June 20, 2003

as Plaintiff submitted. The Appeals Council, however, concluded that,

> neither the medical expert's testimony nor the decision
> rationale cites the specific medical findings contained in Dr.
> Deardorff's report or other more recent reports (e.g. Exhibits
> 21F and 23F) that demonstrate any significant difference in
> the severity of the claimant's functional limitations on that
> date as compared to the findings in several prior
> psychological examination and other reports contained in the
> record (Exhibits 12F, 14F, 15F, and 16F). Further, the
> medical expert stated that there was "no convincing evidence
> of a severe primary impairment in the psychological arena"
> prior to August 8, 2005, despite evidence in the record
> reflecting treatment for depression for several months
> beginning in July 2003, and two examination reports
> containing diagnoses of major depression in early 2005
> (Exhibits 12F, 14F, 15F, and 16F). There is no rationale in
> the decision to support a conclusion that the claimant's
> depression was not a significant impairment within the
> meaning of the regulations prior to August 2005, and no
> rationale to support a conclusion that the severity of the
> functional limitations arising from this depression was less
> than that as of the established onset date.

(Tr. 542-43). The Appeals Council forthrightly directed the ALJ on remand to:

> Reevaluate the entire record in this case and provide rationale
> for the findings on the severity of the claimant's physical and
> mental impairments and their functional limitations. If the
> claimant is found disabled for a period subsequent to the

> claimant's alleged onset date, the [ALJ] will rationalize the
> evidence supporting changes in the severity of functional
> limitations that result in the ultimate conclusion of disability.

(Tr. 543).

On remand, ALJ McNichols came to the same conclusion as ALJ Knapp, finding

Plaintiff disabled as of August 1, 2005, but not before. Plaintiff maintains he made the

same mistakes.

ALJ McNichols recounted the psychological evidence during the relevant time

period. In September 2002, Dr. Sours, a psychologist, examined Plaintiff at the request of

the Bureau of Disability Determination. Plaintiff reported hearing things that are not

there and several suicide attempts. (Tr. 253). Dr. Sours suspected her of "malingering."

(Tr. 254, 412). He found her to have marginal insight and judgment, as well as past recall

problems, and recommended "[a]dditional testing for level of intellect, a significant

memory deficit and/or a learning disability." (Tr. 254). Dr. Sours diagnosed major

depression and alcohol dependence and assessed a GAF score of 65, or mild symptoms.

(Tr. 255, 411-12).

On June 20, 2003, Plaintiff's asserted onset date, Plaintiff entered treatment at

South Community Behavioral Healthcare for anger, depression, and nervousness. Her

initial diagnostic assessment report shows Plaintiff reported suicidal ideation, confusion,

poor concentration, anxiety, and depression. (Tr. 376). She was referred to psychiatrist

Dr. Miller, D.O., who diagnosed recurrent and severe major depressive disorder and

anxiety disorder NOS, and assigned a GAF of 40, denoting a severe impairment. (Tr. 362, 412).

Plaintiff was taken to the emergency room in November 2003 after drunkenly overdosing on pills. The ALJ wrote, "[t]here was no indication that she had suicidal ideation or that this was a gesture or attempt," though the form is more ambiguous.[1] (Tr. 335, 412). For instance, the hospital notes state that Plaintiff complained of depression at the hospital, that she hade a prior suicide attempt, and that she was suffering from depression during her prior suicide attempt. (Tr. 335).

In late 2004, after a period of basic treatment and medication compliancy, and after "moderately achiev[ing]" her goals of fewer angry outburst and decreased alcohol consumption (Tr. 719), Dr. Miller and the South Community treatment center terminated Plaintiff for noncompliance. (Tr. 704-5, 412).

In January 2005, psychologist Dr. Howard, Ph.D., examined Plaintiff related to her workers' compensation claim. Dr. Howard noted that her mood and affect were characterized by depression. (Tr. 732, 412). Plaintiff again reported suicidal ideation and a history of past attempts. (*Id.*). Dr. Howard believed Plaintiff suffered from major

---

[1] The completed form on which the ALJ based such a statement is difficult to interpret. The person who completed the form circled that Plaintiff was depressed, noting, under the category "situational problems," that she "spent all her money on lottery tickets." (Tr. 335). In a subsequent section titled, "suicidal thoughts / specific plan / gesture or attempt," the person completing the form made left-to-right slashes through "suicidal thoughts," and "specific plan," leaving "gesture or attempt" unblemished and not elaborating further in the space provided. (*Id.*). The slashes appear to differ from those denoting something like a checkmark, as they go in the opposite direction, but the fact that "gesture or attempt" is neither crossed-out nor circled renders the form difficult to decipher. That the form also notes Plaintiff's depression and previous suicide attempts creates further opacity. It is curious, then, that the ALJ makes such a definitive statement regarding it.

depression, which he noted had a developmental etiology, and assigned a GAF score of 50, which denotes serious symptoms. (Tr. 735, 412).

At the state Bureau of Disability Determination's request, psychologist Dr. Jones, Ph.D., examined Plaintiff in April 2005. Plaintiff again reported suicidal ideation. (Tr. 743, 413). Dr. Jones diagnosed major depression, recurrent, post-traumatic stress disorder, with a GAF of 51, the lowest score in the moderate range. (Tr. 746, 413).

Psychologist Dr. Deardorff, Ph.D. examined Plaintiff in August 2005 as a result of her workers' compensation claim. This examination marks the threshold at which ALJ Knapp found Plaintiff became disabled. (Tr. 773, 413). In Dr. Deardorff's estimation, Plaintiff had weak intellectual skills and an invalid personality test due to exaggeration. (Tr. 775-76, 413). Plaintiff again reported suicidal ideation and previous attempts. (Tr. 773, 413). Dr. Deardorff ultimately diagnosed borderline intelligence, major depression, personality disorder NOS, and poor stress management abilities (*see infra*). (Tr. 776-77, 413).

After reviewing the medical source documents, ALJ McNichols then assessed the expert medical testimony. Dr. Buban, a clinical psychologist, testified at the previous hearing held by ALJ Knapp in July 2006. Dr. Buban testified that, despite the many earlier diagnoses of major depression, she did not believe the record supported a finding of disability until August 2005. (Tr. 415-16). Though Plaintiff received low GAF scores of 40 and 43 in 2003, Dr. Buban considered these assessments unclear because the medical professionals only provided a number with no further explanation. (Tr. 487,

-10-

416). As the ALJ wrote, "it was not clear if the GAF rating referred to symptom severity or functional severity." (Tr. 416). Dr. Buban noted that Dr. Jones assessed only moderate impairment. Additionally, when Plaintiff's counsel noted that her depression was termed unresolved upon her dismissal from South Community treatment center for noncompliance, Dr. Buban testified that the statement was ambiguous and of little value or meaning without further elaboration. (Tr. 495, 416). Plaintiff's counsel asked Dr. Buban whether patients with major depression are noncompliant with treatment precisely because they are depressed. Dr. Buban responded, "[r]arely. Usually it's so dystonic to be that depressed, patients are good about coming in for treatment. They want relief." When Plaintiff's attorney sarcastically asked, "Is that why they attempt suicide[,] because they want relief," Dr. Buban, apparently not recognizing the rhetoric, replied, "That may be." (Tr. 495, 416).

At the September 2008 hearing before Judge McNichols, psychologist Dr. Pitcher also provided expert medical testimony. Dr. Pitcher believed Plaintiff's alcohol problems exacerbated her depression, though the ALJ emphasizes that Dr. Pitcher did not consider it a significant factor in Plaintiff's disability. (Tr. 1012, 415, 417). Dr. Pitcher also stated emphatically that Plaintiff was not, in her estimation, mentally retarded. (Tr. 1013, 415). Dr. Pitcher concluded that, despite the various prior diagnoses of major depression, the severity of Plaintiff's psychological problems was not sufficient to meet a listed impairment. (Tr. 1016, 417). Though Plaintiff's attorney pointed out several significantly low GAF scores during this period, Dr. Pitcher did not deem Plaintiff to be

markedly impaired. (Tr. 1019, 417).  Like Dr. Buban, Dr. Pitcher considered the low

GAF scores to be essentially ciphers, but most likely the result of Plaintiff's stated

suicidal ideations rather than major depression, and nonetheless not indicative of

Plaintiff's ability to work.  (Tr. 1019-20, 1024, 417).

After recounting the evidence, the ALJ attempted to analyze it according to the

Appeals Council's Order.  At this point, the ALJ committed three related procedural

errors on remand.  First, the ALJ wrote,

> The Appeals Council took issue with the prior Administrative
> Law Judge's evidentiary support with regard to the claimant's
> depression deteriorating to such extent that as of August
> 2005, she was markedly impaired with regard to stress
> tolerance for work.  I find that the Medical Expert at that time
> (Dr. Buban) expressed quite clearly the basis for her opinion
> and specifically referred to the evidence to support her
> opinion and did so quite well in the face of intensive
> questioning by the claimant's counsel with regard to her
> functioning prior to August 2005.

(Tr. 418 (parenthetical omitted)).  This finding directly conflicts with the Appeals

Council's Order, quoted *supra*, which specifically found that Dr. Buban's testimony did

not provide a sufficient basis to differentiate Plaintiff's impairment on August 1, 2005

from the preceding period dating to June 20, 2003.  (Tr. 542-43).  By recasting Dr.

Buban's testimony as evidence that Plaintiff was not disabled during the relevant time

period, the ALJ disregarded the Appeals Council's Order, breaching 20 CFR

§ 416.1477(b).[2]  The Appeals Council conclusively determined that Dr. Buban's

---

[2] 20 CFR § 416.1477(b) states: "Action by administrative law judge on remand.  The
administrative law judge shall take any action that is ordered by the Appeals Council and may take any
additional action that is not inconsistent with the Appeals Council's remand order."

testimony was unresponsive to the issue in this case. Therefore, the ALJ's reliance on it was misplaced. Moreover, the ALJ committed the same error twice more.

In assessing Dr. Pitcher's opinion that Plaintiff was not disabled during the time in question, the ALJ concluded, "I find this reliable evidence since this was the finding by a prior Medical Expert [(Dr. Buban)] as well with regard to this period. They both spent much time reviewing and discussing the evidence in support of their opinions, which is the point of having experts at the hearing." (Tr. 418). This too was improper. By resting his own agreement with Dr. Pitcher's testimony partly on the fact that it accorded with Dr. Buban's, the ALJ again neglected the Appeals Council's Order.

Finally, the ALJ made the same mistake when he found the medical evidence "not easy to interpret" because of a paucity of treating source material that left a record of mainly one-time examinations for disability and workers' compensation claims. To compensate, the ALJ found "that the prior Administrative Law Judge reasonably relied on medical expert opinion, and I do the same." (Tr. 419). Again, the previous ALJ's decision was remanded specifically because it relied on Dr. Buban's deficient testimony. That the ALJ reaffirmed, so to speak, the previous ALJ's reliance on Dr. Buban's opinion, even in the face of the Appeals Council's Order deeming it insufficient, is puzzling and violative of that order.

In addition to these procedural errors, the ALJ's substantive analysis was also deficient. The crux of the previous ALJ's finding that Plaintiff was disabled as of August 1, 2005, involved her stress coping capabilities. The previous ALJ determined that

Plaintiff:

> lacked the residual functional capacity to handle the stress of
> ordinary work activity, regardless of exertional level. Hence,
> she is incapable of performing competitive work activity on a
> sustained basis. The inability to meet the requirement of even
> "low stress" jobs warrants a finding of disability, as discussed
> in Social Security Ruling 85-15.

(Tr. 529). He believed Plaintiff's inability to handle stress to be a result of "her

increasing difficulties with depression." (Tr. 528). The evidence most critical to the

ALJ's determination of the date of Plaintiff's disability is that in April 2005 Dr. Jones

considered Plaintiff only moderately impaired in coping with stress, yet by August 2005

Dr. Deardorff "effectively found" her to be markedly impaired. (Tr. 528).

Dr. Deardorff examined Plaintiff in August 2005 on referral by the Bureau of

Workers' Compensation. (Tr. 773). Many of Dr. Deardorff's findings accord with the

ALJ's, from such disparate observations as she performs household chores and watches

television to her exaggeration of her difficulties in a personality test. (Tr. 419, 775-76).

Dr. Deardorff ultimately believed she had major depressive disorder that "often develops

in response to a stressful event." (Tr. 776-77).

Dr. Jones evaluated Plaintiff on April 5, 2005 upon referral by the Bureau of

Disability Determination. Her Psychological Evaluation Report is substantially similar to

Dr. Deardorff's Psychological Evaluation four months later. The only appreciable

difference seems to be Dr. Jones' finding regarding Plaintiff's stress coping capacity. Dr.

Jones wrote that Plaintiff's "mental ability to withstand the stress and pressures associated

with day-to-day work activity is judged as moderately impaired." (Tr. 747).

-14-

Though Plaintiff's lack of stress management was the key to the previous ALJ's finding that Plaintiff was disabled on August 1, 2005, ALJ McNichols barely addressed it. He stated, "[b]ased on the evidence of depressive disorder and including intermittent alcohol use, a low stress restriction was added . . ." (Tr. 420). Yet the ALJ did not explain why Plaintiff's stress coping skills suddenly eroded to the point of disability within that four month time period.

The Appeals Council's remand instructed the ALJ to review the medical evidence in the record from the period at issue. If the ALJ determined that Plaintiff was not disabled during this time, the Appeals Council ordered the ALJ to "rationalize the evidence supporting changes in the severity of functional limitations that result in the ultimate conclusion of disability." (Tr. 543). Particularly with regard to Plaintiff's stress management abilities, the ALJ, just as his predecessor, did not do so.

The ALJ based his decision chiefly (and improperly) on the testimony of Dr. Buban and Dr. Pitcher. Yet neither explained why, with citation to the evidence, Plaintiff's stress was disabling in 2005 but not in 2003. Defendant musters a defense of the ALJ by pointing out that Plaintiff did various "activities [which] tended to discount Plaintiff's allegations of total disability, and the ALJ properly considered them." (*Defendant's Memorandum in Opposition* at 15). These activities include living independently, taking public transportation, being involved with the group Amvets, doing her own cooking, laundry, and other chores, visiting and interacting with relatives and friends, driving, and shopping. (*Id.*). But this again misses the point of the remand order.

-15-

Plaintiff was doing these activities during the time she has been deemed disabled. (*See* Tr. 518-19, 419, 985-86). Therefore, the fact that she engaged in such activities in 2003 does not militate against a non-disability finding.

Substantial evidence does not support a finding that Plaintiff deteriorated from June 20, 2003 to August 1, 2005. Every medical professional who examined Plaintiff, many of them state agency referred, diagnosed major depression. No medical records reveal a worsening of Plaintiff's impairments. As such, in addition to the procedural infirmities, the ALJ's decision finding Plaintiff not disabled from June 20, 2003 to August 1, 2005 is not supported by substantial evidence, and it is reversed.

### III.

When, as here, the nondisability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

-16-

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

As recounted herein, proof of disability is great and remand will serve no purpose other than delay. Two ALJs, the Appeals Council, and now two federal judges have reviewed this near decade-long case at least seven times. All substantial factual issues have been resolved and the record reflects that Plaintiff is disabled. In light of the medical evidence and the fact that two separate ALJs have failed to differentiate Plaintiff's limitations on August 1, 2005 from the alleged onset date, proof of disability is strong and opposing evidence is lacking in substance, therefore remand would merely involve the (re-)presentation of cumulative evidence.

### IV.

For the foregoing reasons, Plaintiff's assignment of error is well taken. The ALJ's decision is not supported by substantial evidence, and it is reversed. This case is remanded for an immediate award of benefits as Plaintiff is entitled to a period of disability, disability insurance benefits, disabled widows benefits, and supplemental security income as of June 20, 2003.

**IT IS SO ORDERED.**

Date: 3/28/11

Timothy S. Black
United States District Judge

-17-